**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1384**

───────────────

APPALACHIAN VOICES; WILD VIRGINIA; WEST VIRGINIA RIVERS COALITION; PRESERVE GILES COUNTY; PRESERVE BENT MOUNTAIN, a chapter of Blue Ridge Environmental Defense League; WEST VIRGINIA HIGHLANDS CONSERVANCY; INDIAN CREEK WATERSHED ASSOCIATION; SIERRA CLUB; CHESAPEAKE CLIMATE ACTION NETWORK; CENTER FOR BIOLOGICAL DIVERSITY,

        Petitioners,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior; UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the U.S. Department of Interior; CINDY SCHULZ, in her official capacity as Field Supervisor, Virginia Ecological Services, Responsible Official; MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service,

        Respondents,

MOUNTAIN VALLEY PIPELINE, LLC,

        Intervenor.

───────────────

On Petition for Review of an Order of the Department of the Interior (CP16-10-000).

───────────────

**No. 23-1592**

───────────────

THE WILDERNESS SOCIETY,

        Petitioner,

v.

UNITED STATES FOREST SERVICE; HOMER L. WILKES, in his official capacity as Under Secretary for Natural Resources and Environment; U.S. DEPARTMENT OF AGRICULTURE; KENDERICK ARNEY, in his official capacity as Regional Forester of the Southern Region,

　　　　Respondents,

and

MOUNTAIN VALLEY PIPELINE, LLC,

　　　　Intervenor.

-------------------------------------------------------------

ROBERT C. SCOTT; GERALD E. CONNOLLY; DONALD S. BEYER, JR.; JENNIFER WEXTON; JENNIFER L. MCCLELLAN; WILLIAM D. ARAIZA; ERWIN CHEMERINSKY; CAPRICE ROBERTS, HOWARD M. WASSERMAN,

　　　　Amici Supporting Petitioner.

───────────────

On Petition for Review of an Order of the Department of Agriculture.

───────────────

**No. 23-1594**

───────────────

THE WILDERNESS SOCIETY,

　　　　Petitioner,

v.

BUREAU OF LAND MANAGEMENT; DEB HAALAND, in her official capacity as Secretary of the Interior; MITCHELL LEVERETTE, in his official capacity as State Director, Bureau of Land Management, Eastern States,

　　　　Respondents,

and

MOUNTAIN VALLEY PIPELINE, LLC,

       Intervenor.

------------------------------------------------------------

ROBERT C. SCOTT; GERALD E. CONNOLLY; DONALD S. BEYER, JR.; JENNIFER WEXTON; JENNIFER L. MCCLELLAN; WILLIAM D. ARAIZA; ERWIN CHEMERINSKY; CAPRICE ROBERTS; HOWARD M WASSERMAN,

       Amici Supporting Petitioner.

---

On Petition for Review of an Order of the Department of the Interior. (VAES-058143-04)

---

Argued: July 27, 2023                    Decided: August 11, 2023

---

Before GREGORY, WYNN, and THACKER, Circuit Judges.

---

Motions to dismiss granted. Judge Wynn wrote the opinion, in which Judge Gregory and Judge Thacker joined. Judge Gregory wrote a separate opinion concurring in the judgment. Judge Thacker wrote a separate opinion concurring.

---

Kevin William McArdle, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents. Kimberley Hunter, SOUTHERN ENVIRONMENTAL LAW CENTER, Chapel Hill, North Carolina; Derek Owen Teaney, APPALACHIAN MOUNTAIN ADVOCATES, Lewisburg, West Virginia, for Petitioners. Donald B. Verrilli, Jr., MUNGER, TOLLES & OLSON LLP, Washington, D.C., for Intervenor.

---

WYNN, Circuit Judge:

These consolidated cases present weighty and important questions involving the separation of powers as it relates to a project of national interest. Petitioners are environmental groups challenging federal agency actions that will enable the final construction and initial operation of the Mountain Valley Pipeline, a 300-plus-mile underground pipeline that will transport natural gas from West Virginia to Virginia.

But during the pendency of this matter before this Court, Congress proactively intervened by legislation and enacted the Fiscal Responsibility Act of 2023. Section 324 of that Act purports to ratify the agencies' actions regarding the Mountain Valley Pipeline and remove our jurisdiction over the underlying petitions. Armed with this new legislation enacted specifically in their favor, Respondents—the federal agencies and the Mountain Valley Pipeline—moved in this Court for the dismissal of the petitions.

Upon consideration of the matters before us, we must grant Respondents' motions to dismiss.

## I.

The legal history of this matter began in 2017 when the Federal Energy Regulatory Commission authorized the construction and operation of the Mountain Valley Pipeline. Since its inception, the project has engendered significant public comment and generated multiple lawsuits from environmental groups challenging federal agency actions granting various approvals and permits necessary for the pipeline's construction.

Up and until Congress's very recently enacted legislation, this Court exercised "original and exclusive" jurisdiction over these challenges under the Natural Gas Act. 15

U.S.C. § 717r(d)(1). Under this authority, we vacated certain agency actions after finding that the agencies failed to comply with the pertinent statutes. *See Appalachian Voices v. U.S. Dep't of Interior*, 25 F.4th 259, 265–66 (4th Cir. 2022) (discussing relevant prior proceedings); *Wild Va. v. U.S. Forest Serv.*, 24 F.4th 915, 923–24 (4th Cir. 2022) (same). Though subject to review, none of those decisions were ever disturbed by the Supreme Court.

The present cases represent the latest such challenges to the Mountain Valley Pipeline's construction, which at this point is "mostly finished." *Appalachian Voices*, 25 F.4th at 282. On April 10, 2023, ten environmental groups petitioned for review of a Biological Opinion and Incidental Take Statement issued for the pipeline on February 28, 2023, by the U.S. Fish and Wildlife Service. On June 1, 2023, The Wilderness Society filed two petitions for review of Records of Decision issued by the Bureau of Land Management and the U.S. Forest Service on May 17 and May 15, 2023, respectively, that granted the Mountain Valley Pipeline certain required permits.

On June 3, while the cases were pending before this Court, Congress enacted the Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 10, for the primary purpose of temporarily suspending the federal debt limit, preventing default. But embedded in the Act was a section containing a set of provisions regarding the Mountain Valley Pipeline, Section 324. At the bottom line, Section 324 sought to thwart the petitions by the environmental groups for review of the permits granted by the relevant agencies. In essence, Congress moved well beyond the type of deference that may be accorded to agencies under the Supreme Court's decision in *Chevron* to declare virtually unreviewable

the actions of the agencies granting permits for the pipeline's construction. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (discussing *Chevron* deference).

Thus, under Section 324(c)(1), Congress "ratif[ied] and approve[d]" all authorizations and approvals "issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline." Under Section 324(c)(2), Congress "direct[ed]" the relevant agencies to "continue to maintain" those same authorizations and approvals. Ratification is to occur "[n]otwithstanding any other provision of law." § 324(c).

In Section 324(e)(1), Congress provided that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any action taken by" certain listed agencies "that grants" any authorization or approval "necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline . . . whether issued prior to, on, or subsequent to the date of enactment of this section, and including any lawsuit pending in a court as of the date of enactment of this section." Relevant to this matter, under Section 324(e)(2), Congress carved out a specific jurisdictional exception to give the U.S. Court of Appeals for the District of Columbia Circuit "original and exclusive jurisdiction over any claim alleging the invalidity of this section or that an action is beyond the scope of authority conferred by this section."

Finally, under Section 324(f), Congress provided that Section 324 "supersede[d] any other provision of law . . . that is inconsistent with the issuance of any authorization" necessary for the Mountain Valley Pipeline.

Just two days after Congress enacted the Fiscal Responsibility Act, on June 5, 2023, Mountain Valley Pipeline—the apparent beneficiary of Section 324—moved to dismiss the underlying actions. On June 14, the federal agencies did likewise. Petitioners responded, arguing only that Section 324 is unconstitutional.

Between July 10 and July 12, this Court consolidated the cases, expedited oral argument on the motions to dismiss to be heard July 27, and temporarily stayed further construction of the pipeline pending our review.[1]

## II.

The threshold question before us is whether Section 324 prohibits this Court from determining if we have jurisdiction to review the petitions. In other words, does a federal court retain jurisdiction for the limited purpose of determining whether it has jurisdiction?

The answer is simply yes. Over twenty years ago, the Supreme Court affirmed that it is beyond dispute that "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). This includes the jurisdiction to review a statute that purports to strip jurisdiction. *See Patchak v. Jewell*, 828 F.3d 995, 1001 (D.C. Cir. 2016) (reviewing a jurisdiction-stripping statute and concluding that the statute divested the court of jurisdiction), *aff'd Patchak v. Zinke*, 138 S. Ct. 897 (2018). Respondents correctly acknowledged as much at oral argument, agreeing that it is

---

[1] On July 27—while this Court was hearing oral argument on the motions to dismiss—the Supreme Court entered an order vacating the temporary stays.

permissible for us to hold a hearing on the pending motions as we carefully consider the scope of our jurisdiction under Section 324.

Having done so, we conclude that Congress has eliminated our jurisdiction over the underlying petitions in two ways.

A.

First, Section 324(c) "ratifie[d] and approve[d]" all existing authorizations and approvals necessary for the Mountain Valley Pipeline and "direct[ed]" the respective agencies to "continue to maintain" those authorizations and approvals. Ratification occurred "[n]otwithstanding any other provision of law."[2] Section 324(f) further provided that Section 324 "supersede[d] any other provision of law. . . that is inconsistent with the issuance of any . . . approval for the Mountain Valley Pipeline."[3]

---

[2] In full, Section 324(c) provided:

(c) APPROVAL AND RATIFICATION AND MAINTENANCE OF EXISTING AUTHORIZATIONS.—Notwithstanding any other provision of law—

(1) Congress hereby ratifies and approves all authorizations, permits, verifications, extensions, biological opinions, incidental take statements, and any other approvals or orders issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline; and

(2) Congress hereby directs the Secretary of the Army, the Federal Energy Regulatory Commission, the Secretary of Agriculture, and the Secretary of the Interior, and other agencies as applicable, as the case may be, to continue to maintain such authorizations, permits, verifications, extensions, biological opinions, incidental take statements, and any other approvals or orders issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline.

[3] In full, Section 324(f) provided:

There is no dispute that the agency actions Petitioners challenge in the underlying petitions fall within the ambit of Section 324(c). Prior to the enactment of Section 324(c), this Court would have had to determine if those approvals complied with the relevant environmental laws. Now, Congress has ratified those approvals "[n]otwithstanding" those other laws. § 324(c). In doing so, it has necessarily amended the legal standards that previously applied.

It is well settled that Congress has the power to ratify agency action. *See United States v. Heinszen & Co.*, 206 U.S. 370, 382 (1907) (describing Congress's "power of ratification as to matters within [its] authority" as "elementary"); *Patchak*, 138 S. Ct. at 911 (Breyer, J., concurring) (observing that there is "no substantial argument" that "Congress act[s] unconstitutionally by ratifying [agency] actions"). When it does so, Congress may not impermissibly tell this Court how to apply existing law. But it may provide a new standard—here, Section 324(c)—and instruct this Court to apply that new standard to the case before us. That permissible exercise of Congress's legislative powers does not infringe Article III. *See Bank Markazi v. Peterson*, 578 U.S. 212, 225 n.17 (2016) (noting that Congress infringes Article III when it "direct[s] the court how pre-existing law applies to particular circumstances" but not when it creates "new substantive law" that a court must apply even to pending cases).

---

(f) EFFECT.—This section supersedes any other provision of law (including any other section of this Act or other statute, any regulation, any judicial decision, or any agency guidance) that is inconsistent with the issuance of any authorization, permit, verification, biological opinion, incidental take statement, or other approval for the Mountain Valley Pipeline.

To be sure, courts considering similar challenges to statutes with similar language have generally upheld the statutes, reasoning that Congress approving agency action "notwithstanding" other law does not violate the separation of powers because Congress has changed the law, not directed courts to apply existing law. *See, e.g.*, *Friends of Animals v. Jewell*, 824 F.3d 1033, 1045 (D.C. Cir. 2016) (upholding statute directing agency to "reissue" a rule "without regard to any other provision of statute or regulation that applies to issuance of such rule"); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1169 (9th Cir. 2007) ("[W]hen Congress has directed immediate implementation 'notwithstanding any other provision of law,' we have construed the legislation to exempt the affected project from the reach of environmental statutes which would delay implementation."); *Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d 1092, 1094 (D.C. Cir. 2001) (upholding statute directing that the World War II Memorial "shall be constructed expeditiously" consistent with existing plans and permits "[n]otwithstanding any other provision of law").

Accordingly, because Congress has ratified the challenged agency actions, there is no longer a live controversy and the underlying petitions are moot. We therefore lack jurisdiction over them. *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006).

## B.

Second, Congress also eliminated our jurisdiction over the underlying petitions through Section 324(e)(1). That section provided, in relevant part, that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any action taken by" specified agencies "that grants" any authorization or approval "necessary for the

construction and initial operation at full capacity" of the pipeline, including "any lawsuit pending in a court as of the date of enactment of this section."[4]

The Constitution grants Congress the express power to create lower federal courts in the first instance, *see* U.S. Const. Art. I, § 8, cl. 9, which includes the "lesser power to 'limit the jurisdiction of those Courts,'" *Patchak*, 138 S. Ct. at 906 (plurality op.) (quoting *United States v. Hudson*, 11 U.S. 32, 33 (1812)); *see Sheldon v. Sill*, 49 U.S. 441, 449 (1850) (noting that lower federal courts "can have no jurisdiction but such as the statute confers"). Provided it does not violate other constitutional provisions, Congress is widely seen to enjoy broad control over the jurisdiction of the federal courts. *Patchak*, 138 S. Ct. at 906 (plurality op.).

---

[4] In full, Section 324(e) provided:

(e) JUDICIAL REVIEW.—

(1) Notwithstanding any other provision of law, no court shall have jurisdiction to review any action taken by the Secretary of the Army, the Federal Energy Regulatory Commission, the Secretary of Agriculture, the Secretary of the Interior, or a State administrative agency acting pursuant to Federal law that grants an authorization, permit, verification, biological opinion, incidental take statement, or any other approval necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline, including the issuance of any authorization, permit, extension, verification, biological opinion, incidental take statement, or other approval described in subsection (c) or (d) of this section for the Mountain Valley Pipeline, whether issued prior to, on, or subsequent to the date of enactment of this section, and including any lawsuit pending in a court as of the date of enactment of this section.

(2) The United States Court of Appeals for the District of Columbia Circuit shall have original and exclusive jurisdiction over any claim alleging the invalidity of this section or that an action is beyond the scope of authority conferred by this section.

The exact confines of Congress's power over jurisdiction are still being debated, especially when it comes to jurisdiction-stripping efforts that appear to dictate the outcome of pending litigation. This debate is perhaps most clearly seen in the recent case of *Patchak v. Zinke*. In that case, a landowner sued the Secretary of the Department of the Interior, arguing that the agency lacked statutory authority to take certain land into trust for a Native American tribe. *Id.* at 903. While the case was pending, Congress passed the Gun Lake Act, which stripped federal courts of jurisdiction to hear any action "relating to" the property. *Id.* at 904.

A fractured Supreme Court upheld the Gun Lake Act. A four-Justice plurality (Justice Thomas, joined by Justices Breyer, Alito, and Kagan) did so based on the jurisdiction-stripping provision alone, concluding that "[s]tatutes that strip jurisdiction change the law for the purpose of Article III just as much as other exercises of Congress' legislative authority." *Id.* at 906 (cleaned up).[5] But this view did not command a majority. And it was expressly rejected by four other Justices. *See id.* at 919 (Chief Justice Roberts, joined by Justices Kennedy and Gorsuch, dissenting) ("Congress cannot, under the guise of altering federal jurisdiction, dictate the result of a pending proceeding."); *id.* at 913 (Justice Sotomayor, concurring in the judgment) ("[A]n Act that merely deprives federal courts of jurisdiction over a single proceeding is not enough to be considered a change in

---

[5] Justices Ginsburg and Sotomayor voted to uphold the statute based on their view that the Gun Lake Act restored the federal government's immunity from suit. *Patchak*, 138 S. Ct. at 912 (Justice Ginsburg, joined by Justice Sotomayor, concurring in the judgment).

the law and . . . any statute that portends to do so should be viewed with great skepticism.").[6]

Petitioners in this case vehemently argue that the jurisdiction-stripping provision in Section 324(e) suffers from the same constitutional infirmities that at least four Justices saw as existing with the statute in *Patchak*. Specifically, Petitioners argue that Section 324(e) "manipulates" jurisdiction to direct entry of judgment for a particular party, the Mountain Valley Pipeline, in pending litigation. Response Br. at 17; *see Patchak*, 138 S. Ct. at 919–20 (Roberts, C.J., dissenting) (expressing the view that Congress impermissibly "exercises the judicial power when it manipulates jurisdictional rules to decide the outcome of a particular pending case").

But regardless of the merits of Petitioners' arguments, this Court is not the one to consider them. That is because Section 324(e)(2) vests the D.C. Circuit with "original and

---

[6] As an aside, we note that the statute at issue in *Patchak*, in addition to the jurisdiction-stripping provision, also contained a ratification provision that "reaffirmed" the property as "trust land" and "ratified and confirmed" the agency's actions in taking that land into trust. *Patchak*, 138 S. Ct. at 904 (plurality op.). The plurality opinion, however, expressly declined to focus on the ratification provision because Patchak did not argue that it was unconstitutional. *Id.* at 904 n.2. But in a sole concurrence, Justice Breyer stated that he would have upheld the statute on ratification alone: "The petitioner does not argue that Congress acted unconstitutionally by ratifying the Secretary's actions . . . , and I am aware of no substantial argument to that effect." *Id.* at 911 (Breyer, J., concurring) (citing *Heinszen*, 206 U.S. at 382–83). The dissenters appear to have agreed, Chief Justice Roberts writing that "if [the ratification provision] is constitutional, it is because the provision establishes new substantive standards and leaves the court to apply those standards in the first instance." *Id.* at 922 (Roberts, C.J., dissenting). In other words, four Justices in *Patchak* seemingly believed that Congress ratifying agency action in a manner virtually identical to Section 324(c) is a lawful exercise of legislative power.

exclusive jurisdiction over any claim alleging the invalidity" of Section 324. This encompasses Petitioners' arguments about the constitutionality of that section.

Petitioners have pointed to no authority that prohibits Congress from vesting a particular court (here, the D.C. Circuit) with jurisdiction over a class of claims (here, challenges to the constitutionality of Section 324). Rather, Petitioners argue that, despite the plain language of Section 324(e)(2), this Court can nevertheless rule on the merits of their constitutional arguments. In support, Petitioners interpret the word "claim" to refer to a "cause of action" and the command that the D.C. Circuit "shall have" "original" jurisdiction as signaling prospective application only. In other words, for Petitioners, Section 324(e)(2) is merely a "venue provision that prescribes where post-enactment claims directly challenging Section 324 must be filed originally." Response Br. at 6.

We disagree. As Respondents point out, "claim" has a natural reading much broader than just a cause of action, referring to any argument or allegation. *See, e.g.*, *Biden v. Nebraska*, 143 S. Ct. 2355, 2372 (2023) (discussing "the EPA's *claim* that the Clean Air Act authorized it to impose a nationwide cap on carbon dioxide emissions") (emphasis added). And the grant of "original" jurisdiction merely signals that the D.C. Circuit can hear such arguments about the constitutionality of Section 324 in the first instance, without a district court first weighing in.

Statutory context confirms this understanding. *See Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Section 324 clearly evinces a "statutory scheme" to withdraw

jurisdiction from all courts to review certain agency actions related to the Mountain Valley Pipeline, while giving the D.C. Circuit "exclusive" jurisdiction for any challenges to Section 324 itself.[7]

Accordingly, we conclude that Section 324(e)(1) strips this Court of jurisdiction to consider the underlying petitions, and that Section 324(e)(2) strips this Court of jurisdiction to consider Petitioners' arguments about the constitutionality of Section 324. Those arguments must be heard, if at all, by the D.C. Circuit.

\*    \*    \*

In sum, with Section 324, Congress removed our jurisdiction in a way that mandates dismissal of the underlying petitions, which challenge agency actions that grant necessary approvals for the completion of the Mountain Valley Pipeline. Indeed, "no court" has jurisdiction to review these approvals, *see* § 324(e)(1), including the D.C. Circuit, whose jurisdiction is limited to "claim[s] alleging the invalidity of [Section 324] or that an action is beyond the scope of authority conferred by [Section 324]," § 324(e)(2).

But Congress left in place the general grant of jurisdiction to this Court under the Natural Gas Act over challenges to future pipelines or other natural gas facilities in this

---

[7] This conclusion is further confirmed by reference to the Natural Gas Act, which granted this Court its "original and exclusive jurisdiction over any *civil action*" related to the Mountain Valley Pipeline. 15 U.S.C. § 717r(d)(1) (emphasis added). In contrast, Section 324 grants the D.C. Circuit "original and exclusive jurisdiction over any *claim* alleging the invalidity" of Section 324. § 324(e)(2) (emphasis added). Courts "usually presume differences in language . . . convey differences in meaning," especially where Congress has enacted statutes covering the same subject. *See Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071 (2018) (citation omitted).

circuit, 15 U.S.C. § 717r(d)(1), as well as future challenges to operations of the Mountain Valley Pipeline not covered by the express terms of Section 324.

For example, at oral argument counsel for the Mountain Valley Pipeline provided the hypothetical of a new "spur" on the pipeline that was not covered by the original approvals, agreeing that a challenge to that spur would fall outside the scope of Section 324. Oral Arg. at 25:18–32, *available at* https://www.ca4.uscourts.gov/OAarchive/ mp3/23-1384-20230727.mp3. And counsel for the federal agencies agreed that this Court would be free to hear a future case involving the operation of the pipeline—e.g., if a pipe exploded or leaked—because such a challenge would not be to an "approval" "necessary" for the "construction and initial operation at full capacity" of the pipeline as required by the text of Section 324. *Id.* at 1:18:10–1:19:01; *see* § 324(e)(2).

We save such challenges for another day. Here, Congress has removed our jurisdiction to hear the merits of the present petitions. Petitioners' sole contention in response to the motions to dismiss was that Section 324 was unconstitutional, a claim that can only be heard by the D.C. Circuit. Therefore, the motions to dismiss must be granted for lack of jurisdiction.

III.

For the foregoing reasons, we grant Respondents' motions to dismiss.

*DISMISSED*

16

GREGORY, Circuit Judge, concurring in judgment:

I agree with my colleagues' assessment that we must dismiss these cases for want of jurisdiction. As they rightly assert, our authority under Article III extends in the typical case to an evaluation of our jurisdiction to hear the underlying dispute. That inquiry necessarily includes any question of the validity of a statute that intends to withdraw our jurisdiction. But Section 324 of the Fiscal Responsibility Act is not the typical statute. Section 324(e)'s jurisdictional bar not only purports to withdraw this Court's consideration of the underlying agency actions. It also forbids us from deciding what the Constitution has to say about Section 324 itself. For that task, Congress entrusted the D.C. Circuit (and presumably the Supreme Court upon a writ of certiorari) alone. I join the majority in abiding Congress's wishes in that regard.

But, where Section 324's text curtails this Court's judicial authority, the provision's peculiar nature (to say nothing of the burden it has placed upon these proceedings) invites exposition. Among its smattering of edicts are Congress's ratification and approval of any agency action "necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline," § 324(c)(1), its directions to various executive agencies to maintain those approvals, § 324(c)(2), its withdrawal of judicial review over those same agency actions—including in pending lawsuits—§ 324(e)(1), and its intention that the D.C. Circuit "have original and exclusive jurisdiction over any claim alleging the invalidity" of Section 324 or any action related to its pronouncements, § 324(e)(2). By all accounts, Congress went to such lengths to ensure the Mountain Valley Pipeline's "timely" construction as a matter of "national interest." § 324(b). "To that judgment we owe all

deference, saving only what we owe to the Constitution." *Yakus v. United States*, 321 U.S. 414, 461 (1944) (Rutledge, J., dissenting).

Courts maintain an enduring "duty to evaluate the constitutionality of legislative acts" so as to ensure "that an act of the legislature[] [is not] repugnant to the constitution" and therefore "void." *Moore v. Harper*, 143 S. Ct. 2065, 2079–80 (2023) (citation omitted).  I agree with Judge Thacker's observation on that score:  "Congress has tipped the balance of power in its favor given that this provision requires us to allow another co-equal court to answer questions central to our own jurisdictional inquiry."  *Post* at 23.  Indeed, that sweeping result appears to leave us not with "new substantive law" to apply, *Bank Markazi v. Peterson*, 578 U.S. 212, 225 n.17 (2016), nor even our constitutional obligation to decide the scope of our own province.  Section 324 is instead a mandate to enforce its will "without regard for [its] validity."  *Yakus*, 321 U.S. at 468 (dissenting opinion).

"Upon this point a page of history is worth a volume of logic."  *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921).  We have much to learn from the history recounted by Chief Justice Roberts's dissenting views from the majority opinion in *Bank Markazi* and the plurality opinion in *Patchak v. Zinke*, 138 S. Ct. 897 (2018).  I expound upon it to place emphasis on the central role the separation of powers plays in our republic.

During the founding era, state constitutional structures served as something of a proving ground to distill the principles that would form the core of our national Constitution.  In those early days, state constitutions lacked "structural mechanisms to check the dominant legislatures."  Robert F. Williams, *The State Constitutions of the Founding Decade:  Pennsylvania's Radical 1776 Constitution and Its Influences on*

*American Constitutionalism*, 62 Temp. L. Rev. 541, 547–548 (1989). Unsurprisingly, then, many legislatures "functioned as courts of equity of last resort, hearing original actions or providing appellate review of judicial judgments." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995). What's more, "they routinely intervened in cases still pending before courts," granting all manner of judicial relief. *Bank Markazi*, 578 U.S. at 239 (Roberts, C.J., dissenting); *see also, e.g.*, *Judicial Action by the Provincial Legislature of Massachusetts Acts and Resolves of the Province of Massachusetts Bay*, 15 Harv. L. Rev. 208, 208 n.1 (1901) (detailing the ways in which the Massachusetts legislature "act[ed] in a judicial capacity, sometimes trying causes in equity, sometimes granting equity powers to some court of the common law for a particular temporary purpose"). Those proceedings often "legislat[ed] for individuals, and for particular cases . . . much too frequent[ly]." Vermont State Papers 1779–1786, 542 (W. Slade ed. 1823).

Consequently, our independent judiciary "in large measure, reflects a reaction against . . . the blending of state legislative and judicial authority" seen rampant among the pre-framing states. John F. Manning, *Response, Deriving Rules of Statutory Interpretation from the Constitution*, 101 Colum. L. Rev. 1648, 1663 (2001). Observing the status quo ante in Virginia, Thomas Jefferson complained that Virginia's assembly had assumed the "legislative, executive, and judiciary" functions, in what he termed "elective despotism." Thomas Jefferson, Notes on the State of Virginia 170–71 (2nd ed.). He advocated instead for a society "in which the powers of government should be so divided and balanced among several" branches. *Id.*

19

James Madison, also remarking on the Virginia experience, lamented that the assembly, "in many instances, decided rights which should have been left to judiciary controversy" despite the state's constitutional declaration "that the three great departments ought not to be intermixed." The Federalist No. 48, at 258 (G. Carey & J. McClellan eds. 2001). He reported much the same of Pennsylvania. *Id.* at 259 ("[C]ases belonging to the judiciary department [were] frequently drawn within legislative cognizance and determination."). In view of all this, Madison concluded that "projects of usurpation by either of [the executive or legislative departments] would immediately betray and defeat themselves." *Id.* at 257–58. "Were the power of judging joined with the legislative," he cautioned, "the life and liberty of the subject would be exposed to arbitrary control." The Federalist No. 47, at 251–52. Alexander Hamilton agreed: "all possible care is requisite to enable [the judicial department] to defend itself against . . . attacks" from the legislative and executive departments. The Federalist No. 78, at 402. That is because "there is no liberty, if the power of judging be not separated from the legislative and executive powers." *Id.*

The Constitution focuses on the structure and distribution of responsibility among the three branches of federal government. The first three articles of the Constitution manifest the division sought by its signatories. Inherent in those provisions of power is the basic concept that each branch "exercise[s] . . . the powers appropriate to its own department," and no branch can "encroach upon the powers confided to the others." *Kilbourn v. Thompson*, 103 U.S. 168, 191 (1881). Thus, the notion that "[t]he judicial power [is] the Judiciary's alone," *Bank Markazi*, 578 U.S. at 242 (Roberts, C.J., dissenting), is an "unambiguously enunciate[d] . . . fundamental principle" that must "be

jealously guarded," *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60 (1982) (plurality opinion).

The separation of powers is therefore the keystone holding our republic together. That formidable credo "safeguards the role of the Judicial Branch in our tripartite system." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850 (1986). It ensures that no president mistakes the people of this country for royal subjects. *Comm. on Judiciary, United States House of Representatives v. McGahn*, 415 F. Supp. 3d 148, 213 (D.D.C. 2019) ("Stated simply, the primary takeaway from the past 250 years of recorded American history is that Presidents are not kings."). And it is what binds the courts as Congress's "faithful agents." Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 111, 163 (2010). To be sure, then, judicial review "can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto." *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (cleaned up). We must therefore practice vigilance against temptations to "elid[e] these boundaries," lest we risk "undermin[ing] the rule of law and diminish[ing] liberty." Neil Gorsuch, A Republic, If You Can Keep It 43, 61 (2019).

What does Section 324 say about the rule of law today and the history from which it has taken root? The petitioners in these cases, the "inferior Courts," and Congress alike depend on the answer to that question. And the answer depends, in turn, on the fate of Section 324. Is it simply a change in the law? Or is it an instruction requiring that "the court must deny to itself the jurisdiction" originally granted to it by Congress "because and

only because its decision, in accordance with settled law," is averse to the Mountain Valley Pipeline and favorable to its opponents? *United States v. Klein*, 80 U.S. 128, 147 (1871). Those who celebrate Congress's decision to pass Section 324 into law, no less than those who condemn it, may be forgiven for their judgments because the separation between the legislative and judicial branches presently lacks fortification. *See Ante* at 12–13 (detailing the Supreme Court's "fractured" decision in *Patchak*).

There can be no mistake, however, that Section 324 is a blueprint for the construction of a natural gas pipeline by legislative fiat. If that provision is likewise constitutionally sanctioned, then Congress will have found the way to adjudicate by legislating for particular cases and for particular litigants, no different than the governmental excesses our Framers sought to avoid. For that reason, I fear Congress has employed this Court's constitutionally directed deference to legislative prerogatives to undermine the Constitution and, in the process, it has made the Court an accessory to its deeds. If that is so, I wonder if Section 324 is a harbinger of erosion not just to the environment, but to our republic. That, only our Supreme Court can decide.

THACKER, Circuit Judge, concurring:

I join the majority opinion in upholding Section 324 because that is what the law requires.

As the opinion explains, Congress has authority both to change the substantive law applicable to pending litigation and to vest "a particular court (here, the D.C. Circuit) with jurisdiction over a class of claims (here, challenges to the constitutionality of Section 324)." Maj. Op. at 14. While I join the conclusion that Congress has acted within its legislative authority in enacting Section 324(e)(2), I write separately because Congress's use of its authority in this manner threatens to disturb the balance of power between co-equal branches of government. Such exercises of the legislative authority "should be viewed with great skepticism." *Patchak v. Zinke*, 138 S. Ct. 897, 913 (2018) (Sotomayor, J., concurring in judgment).

By restricting claims regarding the constitutionality of Section 324 to only the Court of Appeals for the District of Columbia, Congress has tipped the balance of power in its favor given that this provision requires us to allow another co-equal court to answer questions central to our own jurisdictional inquiry. Here, Petitioners challenged the motions to dismiss by arguing that Section 324 is unconstitutional, and therefore its jurisdiction stripping provision, Section 324(e)(1), is ineffective. In any other circumstance, we would resolve the motions to dismiss by deciding the underlying jurisdictional question. But here, Congress enacted Section 324(e)(2) as an end run around our judicial decision-making -- no doubt motivated at least in part because of the view of some in Congress that the pipeline would be finished today if it weren't for the rulings by

the Fourth Circuit.[1]  Instead of deciding the question for ourselves, we are forced to allow the D.C. Circuit, and only the D.C. Circuit, to decide whether Section 324 is constitutional. In turn, the only question for this court is whether the D.C. Circuit provision itself is constitutional.

We limit our inquiry to that question because we have determined we are bound to do so, but the judicial branch should proceed with caution in scenarios like this one.  As Judge Wynn asked at oral argument in reference to the idea that Congress can alter pending litigation through jurisdiction stripping alone, "Where does it go? Where else is it going to show back up[,] maybe in a different environment?"  Oral Arg. at 53:30–53:32.  Can Congress, with particular pending litigation in mind, strip a particular court of jurisdiction to hear a certain type of cases when it disagrees politically with the view of the law that court has taken in the past?  Can Congress punish courts for rulings that it views as "political" or "activist" by stripping them of jurisdiction over similar cases?  Can it then insulate those decisions from further judicial review by enacting a provision like Section 324(e)(2)?  Indeed, can Congress go so far as to usurp the role of the Supreme Court?  We appear to be inching close to the line.  But as it stands, we have no clear guidance from the Supreme Court on where the line between legislative and judicial power lies, especially when Congress acts for the purpose of influencing pending litigation or even going so far as to pick a winner in that pending litigation.

---

[1] A contrary view might be that the pipeline could be finished today had MVP and Respondents followed all of the necessary laws and regulations to get it done.

While Chief Justice Roberts, joined by Justices Kennedy and Gorsuch, has explained that he "would hold that Congress exercises the judicial power when it manipulates jurisdictional rules to decide the outcome of a particular pending case," *Patchak*, 138 S. Ct. at 919–20 (Roberts, C.J., dissenting), four other justices have held that "[s]tatutes that strip jurisdiction 'change the law'" and are permissible even when they decide pending litigation, *id.* at 907 (Thomas, J.). And, recently, while acknowledging that ". . . Congress can regulate various aspects of what the Supreme Court does," Justice Kagan noted, "Can Congress do anything it wants? Well, no. . . . There are limits here, no doubts." Josh Gerstein, *Kagan enters fray over Congress' power to police Supreme Court*, Politico (Aug. 3, 2023), https://perma.cc/WF6H-QV8K; https://www.politico.com/news/2023/08/03/kagan-enters-fray-over-congress-power-to-police-supreme-court-00109770?cid=apn (last visited Aug. 6, 2023).

This case makes clear that the line is a fine one and perhaps we are getting far too close to tipping the balance of power. "What is the limiting principle?. . . When will the Supreme Court give us an opinion that lays it out clearly?" Oral Arg. at 52:40–53:45. There must be a firm limit on Congress's intrusion into the judicial branch.

Additionally, I am compelled to set the record straight with regard to some of the outside rhetoric that has been spewed in the midst of our work on these cases. My colleagues and I are not politicians or newspaper editorialists. We are judges. As my good colleague Judge Wynn noted during oral argument:

> Judge Wynn: It's something I think that unfortunately is being lost in midst of all this hyperbole that is going on. There needs to be a calmness of understanding

25

that we're just doing our level best to do our job
and no more.

Mr. Verrilli (counsel for MVP): Yes, we fully-

Judge Wynn: And I think you fully understand that.

Mr. Verrilli (counsel for MVP): We appreciate that, Your
Honor.

Oral Arg. at 15:43–16:00.

In response to the passage of Section 324 on June 3, 2023, both Mountain Valley
Pipeline, on June 5, and the federal agency Respondents, on June 14, filed motions to
dismiss, arguing that in light of Section 324, this court no longer possesses jurisdiction
over the pending litigation.  Briefing on those motions was completed on July 10.  Given
the significance of the case and the importance of the issues involving the separation of
powers, on July 12 we scheduled the motions for oral argument and expedited the timing
of such argument.  In other words, we set out to not only do our jobs, but to do so
expeditiously.  Yet, we have been variously referred to by certain media and politicians as
overstepping, activist, alarming, willful, ignoring the law, and a judicial hellhole.  Some
have gone so far as to say that we are without jurisdiction to even hold a hearing and rule
on the motions to dismiss.  Wrong.

Although Congress certainly has authority to pass laws impacting federal court
jurisdiction, no branch of government in our democracy possesses all powerful authority.
That is basic Civics 101.  We have three separate but *co-equal* branches of government:
the legislative, executive, and judiciary.  Congress makes the law, the executive enforces
the law, and the judiciary interprets the law.  Although Congress may act to strip federal

court jurisdiction, that is not the last word on the matter. The courts still have a role to play. As the majority opinion lays out, "The threshold question before us is whether Section 324 prohibits this Court from determining if we have jurisdiction to review the petitions. In other words, does a federal court retain jurisdiction for the limited purpose of determining whether it has jurisdiction?" Maj. Op. at 7.

It should go without saying that political pundits certainly do not get to decide whether our court has jurisdiction or when we can hold a hearing. We do. The Supreme Court has clearly stated that "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); Maj. Op. at 7. Indeed, Mountain Valley Pipeline and the federal agency Respondents themselves recognize as much:

> Judge Thacker: Because we have to determine our own jurisdiction. And you agree it's always our role to determine our own jurisdiction, right?
>
> Mr. Verrilli (counsel for MVP): I agree with that, your honor.
>
> . . .
>
> Judge Wynn: You are saying this hearing is permissible for a limited purpose?
>
> Mr. Verrilli (counsel for MVP): Yes. Absolutely.
>
> Judge Wynn: It is not one that is without authority, it is not one at which we don't have jurisdiction to have this hearing.
>
> Mr. Verrilli (counsel for MVP): Absolutely right. Yes, we certainly agree with that.
>
> . . .

> Judge Thacker: Yes, particularly when Mountain Valley
> Pipeline made the motion to dismiss that
> brought us here.
>
> Mr. Verrilli: Yes, absolutely. We are completely in agreement.

Oral Arg. at 14:37–45; 15:10–24; 16:01–10.

With a healthy respect for the bedrock principle of the separation of powers -- but with a wary eye toward a potential improper imbalance of power -- today I join my colleagues in granting the motions to dismiss because that is what the law requires.